**FOX ROTHSCHILD LLP**
Trey A. Monsour, Esq.
State Bar No. 14277200
2501 N. Harwood Street, Suite 1800
Dallas, TX 75201-1613
Telephone: (214) 231-5796
Email: tmonsour@foxrothschild.com

**LOWENSTEIN SANDLER LLP**
Michael A. Kaplan, Esq.
(*Admitted Pro Hac Vice*)
Brent Weisenberg, Esq.
(*Admitted Pro Hac Vice*)
Colleen M. Restel, Esq.
(*Admitted Pro Hac Vice*)
One Lowenstein Drive
Roseland, NJ 07068
Telephone: (973) 597-2500
Email: mkaplan@lowenstein.com
Email: bweisenberg@lowenstein.com
Email: crestel@lowenstein.com

**LOWENSTEIN SANDLER LLP**
Jeffrey L. Cohen, Esq.
(*Admitted Pro Hac Vice*)
Eric Chafetz, Esq.
(*Admitted Pro Hac Vice*)
Phillip Khezri, Esq.
(*Admitted Pro Hac Vice*)
1251 Avenue of the Americas, 17th Floor
New York, NY 10020
Telephone: (212) 262-6700
Email: jcohen@lowenstein.com
Email: echafetz@lowenstein.com
Email: pkhezri@lowenstein.com

*Counsel for the Official Committee of Unsecured Creditors*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| *In re*: | Chapter 11 |
| TUESDAY MORNING CORPORATION, et al.,[1] | Case No. 23-90001 (ELM) |
| Debtors. | (Jointly Administered) |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, | Adv. Pro. No. 23-_____ (ELM) |
| Plaintiff, | |

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Tuesday Morning Corporation (8532); TMI Holdings, Inc. (6658); Tuesday Morning, Inc. (2994); Friday Morning, LLC (3440); Days of the Week, Inc. (4231); Nights of the Week, Inc. (7141); and Tuesday Morning Partners, Ltd. (4232). The location of the Debtors' service address is 6250 LBJ Freeway, Dallas, Texas 75240.

43570/2
05/12/2023 213615210.4

|  |
|---|
| v.<br><br>TASCR VENTURES CA, LLC; TASCR VENTURES, LLC; TM21, LLC; AYON CAPITAL, L.L.C.; RETAIL ECOMMERCE VENTURES LLC; FRED HAND; PAUL METCALF; MARC KATZ; BRIGHAM DELL YOUNG (A/K/A DELL YOUNG); PHILLIP HIXON; WILLIAM BAUMANN; SHELLY TROSCLAIR; MALINDA CODAY (A/K/A/ MINDI CODAY); JENNYFER BARBER GRAY; MARTIN LEWIS; and LOUIS ANSARA<br><br>                    Defendants. |

## ADVERSARY COMPLAINT

Plaintiff, the Official Committee of Unsecured Creditors (the "**Committee**") appointed in the bankruptcy cases of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), by way of this adversary complaint against the TASCR Parties (defined below), Ayon Capital, L.L.C., Retail Ecommerce Ventures LLC, Fred Hand, Paul Metcalf, Marc Katz, Brigham Dell Young (a/k/a Dell Young), Phillip Hixon, William Baumann, Shelly Trosclair, Malinda Coday (a/k/a Mindi Coday), Jennyfer Barber Gray, Martin Lewis, and Louis Ansara (collectively, the "**FILO C Noteholders**" or the "**Defendants**"), hereby states as follows:

-2-

## I.

## **PRELIMINARY STATEMENT**[2]

1. The claims of the Defendants under the Convertible Notes are not secured debt obligations, but rather disguised equity contributions by insiders and parties seeking to take over control of the Debtors. Indeed, it is clear from the face of the Note Documents that the parties intended to acquire equity in the Debtors rather than to extend secured loans. As such the Committee requests that this Court enter a judgment recharacterizing the claims of the Defendants in connection with the Convertible Notes as equity.

2. If this Court finds that Defendants' claims are true debt, and properly and validly secured by liens in the Debtors' assets, the Debtors and Committee incurred fees, costs, and expenses in preserving of and disposing of the Debtors' property for the benefit of the Defendants. The Committee thus requests that this Court surcharge the property securing the allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property under Section 506(c) of the Bankruptcy Code.

---

[2] Capitalized terms not defined in this Preliminary Statement shall have the meanings ascribed to them in this Complaint.

## II.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the parties and other subject matter of this proceeding pursuant to Sections 157 and 1334 of Title 28 of the United States Code.

4. This is a core proceeding within the meaning of Section 157(b) of Title 28 of the United States Code. The Committee confirms its consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), to the entry of a final order by this Court if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The statutory predicates for the relief sought herein are Sections 105, 502 and 506(c) of Title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 3007 of the Federal Rules of Bankruptcy Procedure.

7. The Committee has standing to pursue the relief requested in this Adversary Proceeding pursuant to Sections 1103 and 1109(b) of the Bankruptcy Code.

8. In the event this Court finds that the Committee does not have standing to assert the causes of action herein, the Committee has filed a motion with this Court requesting that it be granted standing to do so.

## III.

## PARTIES

9. Plaintiff is the Official Committee of Unsecured Creditors in the Chapter 11 Cases (defined below), appointed by the Office of the United States Trustee pursuant to Section 1102(a)(1) of the Bankruptcy Code.

10. The Committee is a party in interest in the Chapter 11 Cases pursuant to Section 1109(b) of the Bankruptcy Code.

11. Defendant TASCR Ventures CA, LLC is a limited liability company organized under the laws of the state of Delaware with a principal place of business located at 1010 N. Florida Avenue, Tampa, Florida 33602.

12. Defendant TASCR Ventures, LLC is a limited liability company organized under the laws of the state of Delaware with its principal place of business located at 1010 North Florida Avenue, Tampa, Florida 33602.

13. Defendant TM21, LLC (together with TASCR Ventures CA, LLC and TASCR Ventures, LLC, the "**TASCR Parties**") is a limited liability company organized under the laws of the state of Delaware with its principal place of business located at 1010 North Florida Avenue, Tampa, Florida 33602.

14. Defendant Ayon Capital, L.L.C. ("**Ayon Capital**") is a limited liability company organized under the laws of the state of Florida with its principal place of business located at 1245 Court Street, Suite 102, Clearwater, Florida 33756.

15. Defendant Retail Ecommerce Ventures LLC ("**REV**") is a limited liability company organized under the laws of the state of Delaware with its principal place of business located at 1680 Michigan Avenue, Suite 700, Miami Beach, Florida 33139.

16. The TASCR Parties, Ayon Capital, and REV are affiliates.

17. The TASCR Parties, Ayon Capital, and REV are referred to collectively herein as the "**REV Parties**."

18. Defendant Fred Hand is the former Chief Executive Officer and a former director of the Debtors. Mr. Hand is a resident of the state of Texas.

19. Defendant Paul Metcalf is the Chief Merchandising Officer of the Debtors. Mr. Metcalf is a resident of the Commonwealth of Massachusetts.

20. Defendant Marc Katz is the former Chief Operating Officer and a former director of the Debtors. Mr. Katz is a resident of the state of the California.

21. As of the Petition Date, Defendant Brigham Dell Young (a/k/a Dell Young) was the Senior Vice President – Financial Planning and Analysis and the Corporate Treasurer of the Debtors. Mr. Young is a resident of the state of Texas.

22. As of the Petition Date, Defendant Phillip Hixon was the Executive Vice President – Store Operations and Real Estate of the Debtors. Mr. Hixon is a resident of the state of Texas.

23. As of the Petition Date, Defendant William Baumann was the Chief Operating Officer and Interim Chief Merchant of the Debtors. Mr. Baumann is a resident of the state of California.

24. Defendant Shelly Trosclair is the former Senior Vice President – General Merchandise Manager of the Debtors. Ms. Trosclair is a resident of the state of Ohio.

25. Defendant Malinda Coday (a/k/a Mindi Coday) is the former Senior Vice President – General Merchandise Manager for the Debtors. Ms. Coday is a resident of the state of Texas.

26. As of the Petition Date, Defendant Jennyfer Barber Gray was the Vice President, Interim General Counsel, and Corporate Secretary for the Debtors. Ms. Gray is a resident of the state of Texas.

27. As of the Petition Date, Defendant Martin Lewis was the Vice President – Logistics, Engineering and Strategy for the Debtors. Mr. Lewis is a resident of the state of Oklahoma.

28. Defendant Louis Ansara is the former Vice President – Human Resources for the Debtors. Mr. Ansara is a resident of the state of Ohio.

29. The Defendants set forth in paragraphs 18 to 28 above are referred to herein as the "**Management Noteholders**."

IV.

**FACTUAL BACKGROUND**

A. **The Debtors' Prepetition Financial Hardship**

30. On May 27, 2020, the Debtors filed for relief under chapter 11 of the Bankruptcy Code. The cases were jointly administered under Case No. 20-31476 (the "**2020 Chapter 11 Cases**") in this Court.

31. On December 23, 2020, this Court confirmed the Debtors' plan of reorganization, and the Debtors emerged from the 2020 Chapter 11 Cases when that plan became effective on December 31, 2020.

32. The Debtors and certain lenders (the "**Term Loan Lenders**") entered into a term loan agreement dated as of December 31, 2020 (as amended from time to time, the "**Term Loan Credit Agreement**"), which provided for a term loan facility in an amount up to $25,000,000.

33. In or around mid-2022, the Debtors hired an investment banker, Piper Sandler, to conduct a search for new equity investments in the Debtors.

34. The Debtors and certain lenders (the "**ABL Lenders**") entered into an ABL credit agreement dated as of May 9, 2022 (as amended from time to time, the "**ABL Credit Agreement**").

35. The ABL Credit Agreement provided for a senior secured asset based revolving credit facility in an amount up to $110,000,000, including the issuance of $25,000,000 of letters of credit.

36. The funds received under the ABL Credit Agreement were not sufficient to fund the Debtors' business plan.

37. Following the Debtors entry into the ABL Credit Agreement, the Debtors tasked Piper Sandler with initiating a strategic process to solicit financing to fully fund the Debtors' business plan.

38. The Debtors were insolvent by in or around the second quarter of 2022.

39. In June 2022, Piper Sandler began outreach efforts and contacted a range of equity investors, credit funds, commercial banks and strategic players.

40. Throughout the summer of 2022, the Debtors, in consultation with Piper Sandler and Haynes and Boone, LLP (the Debtors' former counsel), received and negotiated financing proposals from various parties.

41. In August 2022, the Debtors began preparing for a potential chapter 11 filing.

42. In August 2022, the Debtors sought potential investors to obtain additional capital.

43. The Debtors' negotiations ultimately culminated in the Debtors' entry into the Note Transaction (defined below) in September 2022.

44. Despite an infusion of capital from the Note Transaction, the Debtors continued to struggle from a lack of liquidity.

45. After entry into the Note Purchase Agreement (defined below), the Debtors' financial position deteriorated.

46. After entry into the Note Purchase Agreement, the Debtors engaged professionals to advise them in exploring strategic alternatives.

47. After entry into the Note Purchase Agreement, between September and January 2023, the Debtors, with assistance from their advisors, began to consider a second chapter 11 process and began engaging in restructuring discussions with their prepetition lenders.

48. On November 4, 2022, the Debtors announced that the employment of each of its Chief Executive Officer, Chief Operating Officer, and Interim Chief Financial Officer would immediately terminate.

49. In November 2022, the Debtors missed an extended deadline to file their Form 10-Q with the Securities and Exchange Commission (the "**SEC**").

50. On November 17, 2022, the Debtors reported in an SEC filing that

> the Company determined a material weakness exists in its internal control over financial reporting. . . . Specifically, the Company has concluded that it did not maintain a sufficient complement of personnel with appropriate accounting knowledge, experience and training to oversee the application of certain manual process controls or to maintain adequate segregation of duties.

51. In or around December 2022, the Debtors announced that they had directed Piper Sandler to seek a strategic buyer of the Debtors' businesses.

52. On December 23, 2022, the Debtors delisted themselves from the Nasdaq stock market.

53. On January 5, 2023, the Debtors announced the resignation of their Principal Accounting Officer.

54. On January 29, 2023, the Debtors announced the resignation of a member of their board of directors, which board member represented the largest investor in the September 2022 Note Transaction.

55. Throughout January 2023, the Debtors, with the assistance of their advisors, undertook a marketing process to solicit proposals to raise additional capital, including non-bankruptcy related financing as well as debtor-in-possession financing and/or sale of the company.

56. As discussed below, the Debtors were unable to secure a going-concern sale of their businesses.

**B.** **The FILO C Convertible Notes**

57. On September 9, 2022, Tuesday Morning Corporation and Tuesday Morning, Inc. executed that certain Note Purchase Agreement (the "**Note Purchase Agreement**").

58. TASCR Ventures CA, LLC is the collateral agent under the Note Purchase Agreement.

59. In conjunction with the Note Purchase Agreement, the Debtors issued a series of convertible notes (collectively, the "**Convertible Notes**" and together with the Note Purchase Agreement, Guarantee and Collateral Agreement (defined below), and any related documents, each as may be amended from time to time, the "**Note Documents**" and the transaction, the "**Note Transaction**")

60. The Debtors issued the Convertible Notes under the Note Purchase Agreement on September 20, 2022.

61. The Note Transaction provided for a $35,000,000 private placement.

-10-

62. In connection with the Note Transaction, the Debtors issued $32,000,000 of the Convertible Notes to the REV Parties.

63. In connection with the Note Transaction, the Debtors issued $3,000,000 of the Convertible Notes to the Management Noteholders:

- Defendant Fred Hand: $1,705,000
- Defendant Paul Metcalf: $600,000
- Defendant Marc Katz: $250,000
- Defendant Brigham Dell Young: $200,000
- Defendant Phillip Hixon: $60,000
- Defendant William Baumann: $50,000
- Defendant Shelly Trosclair: $50,000
- Defendant Malinda Coday: $30,000
- Defendant Martin Lewis: $20,000
- Defendant Jennyfer Barber Gray: $20,000
- Defendant Louis Ansara: $15,000

64. Pursuant to the Note Documents, the maturity date, if not previously converted, was the earlier of (a) December 31, 2027, and (b) while the FILO B Obligations remain outstanding, the maturity date of the FILO B Obligations, as such earlier date may be extended at the option of the Holder (capitalized terms as defined in the Note Documents).

65. The Note Documents do not contain a schedule for repayment of the principal amount of the Convertible Notes, and prepayment of the Convertible Notes is not permitted.

66. Pursuant to the Note Documents, interest accrues on the Convertible Notes at a rate equal to the sum of (x) SOFR and (y) 6.50% per annum.

67. Pursuant to the Note Documents, interest is payable in arrears on the last Business Day of any Semi-Annual Period during which Interest accrues to the record holder of the Convertible Notes, provided however that any interest payable on or prior to the second anniversary of the Closing Date, the Issuer may, in lieu of paying all or a portion of such Interests in cash, elect to increase the Principal by an amount equal to all or a portion of such Interest (capitalized terms, not defined here, as defined in the Note Documents).

68. Nasdaq Stock Market rules required stockholder approval prior to closing of the Note Transaction.

69. The Debtors requested and received a financial viability exception pursuant to Nasdaq Stock Market Rule 5635(f), which allows an issuer to issue securities upon prior written application to Nasdaq when the delay in securing stockholder approval of such issuance would seriously jeopardize the financial viability of the company.

70. The Convertible Notes permit the FILO C Noteholders to exchange the Convertible Notes for common stock in the Debtors at any time after issuance, for an exchange price of $0.077 (subject to adjustment).

71. Pursuant to the Convertible Notes, until the Note Transaction received stockholder approval, the FILO C Noteholders were limited to conversion to no more than 90,000,000 shares of common stock.

72. On September 9, 2022, the stock price of the Debtors' common stock at the close of the day was $8.45 per share.

73. On September 21, 2022, the day after the Note Transaction closed, the REV Parties converted the maximum portion of their Convertible Notes (allowed at the time) to

90,000,000 shares of common stock at a conversion price of $0.077 per share (the "**REV Conversion**").

74. The REV Conversion provided the REV Parties common stock at a discount of 99.1% of the price of common stock the day before the REV Conversion.

75. The REV Conversion retired $6.9 million of the REV Parties' Convertible Notes, leaving a balance of $28,100,000 in Convertible Notes held by the REV Parties.

76. Prior to the Petition Date (defined below), an additional $6,900,000 of the Convertible Notes were converted to common stock.

77. The REV Parties acquired immediate majority ownership in the Debtors pursuant to the Note Transaction and REV Conversion.

78. Upon full conversion of the REV Parties' Convertible Notes, the REV Parties would hold 75% of the Debtors' common stock.

79. Upon full conversion of the Defendants' Convertible Notes, the Defendants would hold approximately 81% of the Debtors' common stock.

80. The Management Noteholders each participated in management of the Debtors at the time of the Note Transaction.

81. The Note Documents required a reconstitution of the Debtors' board of directors as a nine-member board, with five individuals designated by the REV Parties, three independent directors reasonably acceptable to the REV Parties and the Debtors, and Defendant Fred Hand (the Chief Executive Officer at the time).

82. The REV Parties designated Tai Lopez, Alexander Mehr, Maya Burkenroad, Sandip Patel and James Harris as members of the Debtors' board of directors.

83. Mr. Lopez became the co-chairman of the Debtors' board of directors.

84. Mr. Lopez is a co-founder and Chief Executive Officer of REV.

85. Mr. Mehr became the co-chairman of the Debtors' board of directors.

86. Mr. Mehr is a co-founder and Chief Executive Officer of REV, and serves as an executive officer at certain subsidiaries of REV.

87. Ms. Burkenroad is the Chief Operating Officer at REV.

88. Mr. Patel and Mr. Harris have since resigned from the Debtors' board of directors.

89. The Debtors were not able to obtain financing from parties other than the Defendants.

90. The funds obtained by the Debtors through the Note Transaction were used (i) to repay certain existing debt and transaction-related costs, and (ii) for working capital and general corporate purposes.

91. On September 20, 2022, in connection with the Note Transaction, the Debtors executed that certain Guarantee and Collateral Agreement.

92. Pursuant to the Guarantee and Collateral Agreement, the Debtors conveyed a security interest in certain assets (the "**Collateral**") to the Defendants.

93. On September 20, 2022, in connection with the Note Transaction, the Defendants entered into three subordination agreements relating to the priority of their secured interests in the Collateral (the "**Intercreditor Agreements**").

**C.     The Chapter 11 Cases**

94. On February 14, 2023 (the "**Petition Date**"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court commencing these cases (the "**Chapter 11 Cases**").

95. No trustee or examiner has been appointed in the Chapter 11 Cases.

96. Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to manage their properties and operate their businesses as debtors-in-possession.

97. On February 27, 2023, the Office of the United States Trustee appointed the Committee pursuant to Section 1102(a)(1) of the Bankruptcy Code.

98. The Committee is comprised of five members: (i) Basis Global Technologies, Inc.; (ii) Enchante Accessories, Inc.; (iii) Azure Home, Inc.; (iv) Amber Libreros; and (v) Michel Design Works.

99. As of the Petition Date, the Debtors believed the Term Loan Lenders were owed an aggregate amount of approximately $24,474,459.00.

100. As of the Petition Date, the Debtors believed the approximate aggregate amount owed to the ABL Lenders (excluding certain fees and outstanding letters of credit) was $998,105.14 in revolving credit loans with the outstanding principal amount of $928,715.14 and accrued interest of approximately $69,390.00; and (ii) FILO B Obligations (as defined in ABL Credit Agreement) in the amount of $7,422,050.00 with the outstanding principal amount of $7,375,000.00 and accrued interest of approximately $47,050.00.

101. As of the Petition Date, the Debtors believed the approximate aggregate amount owed to the Defendants in connection with the Convertible Notes was $21,183,000.00.

D. **The Sale**

102. On February 24, 2023, the Debtors filed the *Motion of Debtors for Entry of (I) an Order (A) Approving Bid Procedures in Connection with the Potential Sale of Certain of the Debtors' Assets, (B) Scheduling an Auction and Sale Hearing, (C) Approving the Form and Manner of Notice Thereof, (D) Authorizing the Debtors to Designate a Stalking Horse Purchaser, (E) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (F) Granting Related Relief; and (II) an Order (A) Approving the Sale of Certain of*

the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Contracts and Leases, and (C) Granting Related Relief* [Dkt. 271] (the "**Sale Motion**").

103. On April 20, 2023, the Debtors filed the *Notice of Successful Bidder with Respect to the Sale of Certain of the Assets of the Debtors* [Dkt. 912] stating that Hilco Merchant Resources, LLC was the successful bidder at the Auction.

104. On April 28, 2023, this Court approved the Sale Motion. [Dkt. 1007].

105. The Debtors and their estates incurred significant costs and expenses since the Petition Date preserving the Defendants' collateral in the amounts to be established at trial.

V.

**CAUSES OF ACTION**

**COUNT ONE**

**(Recharacterization of Claims of the Defendants as Equity)**

106. The Committee repeats and realleges each of the allegations set forth above and below as if fully set forth herein.

107. The Defendants intended to hold and/or obtain an equity interest in the Debtors.

108. The Defendants expected to share in the profits of the Debtors to the exclusion of other creditors.

109. The day after the Convertible Notes were issued, the REV Parties elected to convert the maximum allowable portion (at that time) of the Convertible Notes into 90 million shares of the Debtors' common stock.

110. Upon full conversion, the Defendants would hold approximately 81% of the common stock.

111. The REV Parties intended to have, and currently have, a controlling interest in the Debtors, such that they could share in the Debtors' profits.

112. Pursuant to the Note Documents, the Debtors' board of directors was reconstituted to a nine-member board.

113. Three members of the Debtors' board of directors, including the two co-chairman, are executives at REV.

114. The FILO C Noteholders had and/or have power over the Debtors' decision making both through their role in management and their position on the board of directors.

115. The Management Noteholders were involved in management of the Debtors.

116. The Debtors were not able to borrow funds from outside sources at the time the Convertible Notes were issued.

117. The Debtors were insolvent at the time it issued the Convertible Notes.

118. The Convertible Notes contemplate conversion to equity in the Debtors.

119. The FILO C parties agreed, in the Intercreditor Agreements, to subordinate their interests in the Collateral below other secured creditors.

120. The interest rate in the Convertible Notes is illusory.

121. No interest payments were made in connection with the Convertible Notes.

122. At the time of the Note Transaction, the Debtors were contemplating a chapter 11 filing.

123. The Debtors filed these Chapter 11 Cases less than six months after the Note Transaction.

124. Wherefore, the Committee requests entry of an order recharacterizing any claims relating to the Convertible Notes as equity interests.

## COUNT TWO

**(Surcharge of Defendants' Collateral Under 11 U.S.C. § 506(c)
to the Extent Secured)**

125. The Committee repeats and realleges each of the allegations set forth above and below as if fully set forth herein.

126. The Debtors and Committee incurred fees, costs, and expenses in preserving of and disposing of the Debtors' property for the benefit of the Defendants.

127. If this Court finds that the Defendants hold an allowed secured claim, the Committee requests that this Court surcharge the property securing the allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property under Section 506(c) of the Bankruptcy Code.

128. Wherefore, the Committee requests entry of an order surcharging the property securing any allowed secured claim held by the Defendants, the reasonable, necessary costs and expenses of preserving, or disposing of, such property under Section 506(c) of the Bankruptcy Code.

**WHEREFORE,** the Committee requests that this Court enter judgment against the Defendants as follows:

(i) Recharacterizing any claims relating to the Convertible Notes as equity;

(ii) If this Court finds that the Defendants hold an allowed secured claim, surcharging the property securing the allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property under Section 506(c) of the Bankruptcy Code; and

    (iii)    Granting the Committee such other and further relief as is just and proper.

**FOX ROTHSCHILD LLP**

Dated: May 12, 2023

*/s/ Trey A. Monsour*
Trey A. Monsour, Esq.
2501 N. Harwood Street, Suite 1800
Dallas, Texas 75201-1613
Telephone: (214) 231-5796
Email:   tmonsour@foxrothschild.com

-and-

**LOWENSTEIN SANDLER LLP**
Jeffrey L. Cohen, Esq.
Eric Chafetz, Esq.
Phillip Khezri, Esq.
1251 Avenue of the Americas, 17th Floor
New York, New York 10020
Telephone: (212) 262-6700
Email:   jcohen@lowenstein.com
Email:   echafetz@lowenstein.com
Email:   pkhezri@lowenstein.com

-and-

Michael A. Kaplan, Esq.
Brent Weisenberg, Esq.
Colleen M. Restel, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: (973) 597-2500
Email:   mkaplan@lowenstein.com
Email:   bweisenberg@lowenstein.com
Email:   crestel@lowenstein.com

*Counsel to the Official Committee of Unsecured Creditors*